UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| GENERAL CABLE INDUSTRIES, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:15-cv-81 |
| | ) | |
| CHAUFFEURS, TEAMSTERS, | ) | |
| WAREHOUSEMEN AND HELPERS | ) | |
| LOCAL UNION NO. 135, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION & ORDER

General Cable Industries challenges an arbitration award issued to the Teamsters, the union operating at General Cable's Marion, Indiana facility. General Cable and the Teamsters entered a collective bargaining agreement that included a "union security provision." This is a rather misleading term. One might suspect that it is a term that is favorable to the union, but it's not as good as it sounds. The clause requires all employees to be union members, but only "[t]o the extent permitted by law"—which is to say, not at all. (*See* DE 20-1 at 11.) At least not in the State of Indiana. This is because Indiana is a so-called "right-to-work" state, meaning that employees cannot be required to join a union as a condition of employment. *See* Ind. Code § 22-6-6-8. As a result, new General Cable employees are not required to join the union to work at the Marion factory. But regardless of whether they join, new employees are given a "dues checkoff authorization," which, if signed, authorizes the company to deduct union dues and fees from their wages.

Francis Shephard joined the union and signed the dues checkoff when he started at General Cable. But a few weeks later, he resigned from the union and asked the company to stop deducting union dues from his pay. When General Cable complied with his request, the union filed a grievance, alleging that Shephard could not revoke his authorization early and that the company violated the CBA by stopping the deductions. The matter went to arbitration, and the arbitrator ruled in favor of the union. General Cable seeks to vacate the arbitration award, while the union asks me to confirm it. Both parties have moved for summary judgment.

## **DISCUSSION**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross motions for summary judgment, this standard applies to both motions, and all inferences must be construed in favor of the nonmovant. *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998). My job is not to weigh the evidence, but to determine whether there is any genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The facts are undisputed. The CBA between General Cable and the union requires hourly employees to become union members on the 91st day of employment "[t]o the extent permitted by law[.]" (DE 20-1 at 11.) Because Indiana is a right-to-work state, new hourly employees at the Marion factory may decide not to join the union. Nevertheless, any employee—even those who don't join the union—may authorize the

company to deduct union fees and dues from his wages by signing a dues checkoff authorization card when they start.

On April 13, 2013, Francis Shephard, a new employee at the Marion plant, signed a dues checkoff, which stated that it was "irrevocable for a period of not more than one year" and that it could be revoked in writing only during a two-week window near the anniversary date of Shephard's signature. (*Id.* at 76.) The checkoff Shephard signed also explicitly stated that the assignment of wages "is voluntary and it is not conditioned on my present or future membership in the Union." *(See id.)* Pursuant to Article 32 of the CBA, General Cable began deducting union fees from Shephard's wages and remitting them to the union. (DE 1 ¶ 15; DE 13 ¶ 15; DE 20-5 at 52.) But five weeks later, Shephard did an about-face. He wrote to the union stating that he wanted to resign, and he notified the company that he wanted to rescind his dues checkoff authorization. (DE 20-1 at 77–78.) The union responded by telling Shephard that he could not revoke his authorization until later in the year. (*Id.* at 79.) General Cable took a different view and agreed to stop making the deductions. (*See id.* at 2.)

General Cable's decision to stop deducting dues from Shephard's wages prompted the union to file a grievance requesting remittance of Shephard's dues and fees, and, later, the parties sent the dispute to arbitration. (*Id.* at 3, 82, 87.) The arbitrator found that General Cable violated the CBA by failing to deduct and remit union dues and fees from Shephard's wages after he tried to rescind his authorization. (DE 20-5 at 25.) General Cable disagrees and now seeks to vacate the arbitration award.

"Litigants attempting to overturn an arbitrator's award face a daunting challenge." *ANR Advance Trans. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998) (citation omitted). That's because parties who agree to arbitrate disputes have opted out of the judicial system and chosen instead a "private system of justice offering benefits of reduced delay and expense." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994). Limiting judicial review "is necessary to preserve these benefits and to prevent arbitration from becoming a preliminary step to judicial resolution." *Id.* (internal quotation marks and citation omitted).

The Federal Arbitration Act provides the very limited grounds upon which a court may vacate an arbitration award, which include instances in which an arbitrator has exceeded the authority conferred to him by the parties. *See* 9 U.S.C. § 10(a)(4). But just because an arbitrator gets the facts wrong or misinterprets the law does not mean that he has exceeded his authority or that the award should be vacated. *See Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters*, 990 F.2d 957, 961 (7th Cir. 1993). Instead, a court may vacate an arbitral award only where "the arbitrator deliberately disregards what he knows to be the law." *Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 567 (7th Cir. 2015) (quoting *Eljer Mfg.*, 14 F.3d at 1254).

*Article 5 of the CBA - the Union Security Clause*

General Cable makes a number of arguments for vacating the arbitration award that rely on Article 5 of the CBA—the union security clause discussed above that requires employees to join the union on the 91st day of their employment "[t]o the

extent permitted by law." (DE 20-1 at 11.) The company argues that the award must be vacated because the arbitrator exceeded his authority by (a) "presuming the validity of the Union Security clause[,]" (b) adding "the disclosures required to mitigate the misleading effect of the invalid Union Security clause" into the CBA or assuming the union made them (i.e., told employees they didn't have to join the union); and (c) issuing an award that "explicitly enforces the union security clause" that violates the union's duty of fair representation, the public policy of voluntary unionism, and Indiana law. (DE 25 at 8–15.)

These arguments are perplexing because they barely relate to the dispute at hand. The grievance the parties asked the arbitrator to resolve was not about the legality or policy implications of the union security clause, but instead whether the company was obligated to continue deducting and remitting dues and fees from Shephard's wages even after he tried to revoke his authorization. Here's how the arbitrator framed the issue: "Whether the Employer violated the [CBA] between the parties when it failed and refused to deduct union dues from the wages of Francis Shephard after being informed . . . that he was rescinding his checkoff authorization[.]" (*See* DE 20-5 at 4.) Indeed, a quick study of the arbitrator's opinion undercuts the company's claims about how he viewed the union security clause and Article 5. He did not, as the company claims, "presuppose" the validity of Article 5. Quite to the contrary, the arbitrator explicitly said that he viewed the CBA as one that effectively had no union security clause. (*See* DE 20-5 at 13 ("Article 5 of the Agreement, by its

5

terms, is not in force between the parties."); *see also id.* at 17 (describing this dispute as "parallel" to that in *United Steelworkers of Am., Local 4671 (National Oil Well, Inc.) v. Dugger*, 302 N.L.R.B. 367 (1991), and citing *IBEW, Local 2088 (Lockheed Space Ops. Co.)*, 302 N.L.R.B. 322 (1991), both cases in which there was no union security clause).)

There's also nothing in the opinion to support General Cable's claim that the arbitrator "added" disclosures to the CBA or assumed that the union made clear to employees that they didn't have to join the union. Because the union security clause was "not in force between the parties" (and not at issue), there was no need for the arbitrator to go looking for such disclosures or to otherwise try to determine whether purported problems with Article 5 were cured.

Finally, the arbitrator's award cannot reasonably be said to "explicitly enforce" the union security clause, given that the arbitrator's opinion barely mentions Article 5 and instead focuses on the dues checkoff authorization and Article 32 of the CBA. (*See* DE 20-5 at 9–25.) In fact, the arbitrator only mentioned Article 5 of the CBA twice in his "Analysis and Conclusions"—both times in passing. The first was to say that the union security clause was "by its terms . . . not in force[,]" and the second time was to note that there was *no evidence* that the union security clause misled Shephard to believe that he was *required* to sign the dues checkoff authorizing deduction of union fees. (*Id.* at 13, 22.) In addition, the award itself doesn't refer to Article 5 and instead directs the company to comply with its promise to collect dues and fees in Article 32. (*Id.* at 25–26.)

At bottom, Article 5 of the CBA has little relevance to the dispute at hand, and

6

the arbitrator did not base his award on it. Accordingly, Article 5—legal or not—provides no a basis for vacating the arbitration award.

### *Indiana Law and Federal Preemption*

General Cable next argues that the arbitrator exceeded his authority because the arbitration award requires the company to violate Indiana's wage assignment law and its right-to-work law by requiring the company to comply with "conflicting" federal labor law. (DE 25 at 15–17; *see also George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 578–79 (7th Cir. 2001) (stating that courts may vacate arbitral orders that require a party to violate the law).) This argument does not hold water. To begin with, nothing in the CBA limits the arbitrator's ability to decide disputes when there is a conflict of law. (*See generally* DE 20-1 at 20–22.) The CBA states that the arbitrator's job is to "decide solely which party is right[.]" (*Id.* at 22.) The arbitrator did that by interpreting the CBA in accordance with applicable state and federal laws.

Second, to the extent that an Indiana law conflicts with federal law regarding dues checkoff authorizations, the State law is preempted, and General Cable has no obligation to comply with it. *See Maryland v. Louisiana,* 451 U.S. 725, 746 (1981) ("State laws that have been preempted by federal laws are "without effect."). Indiana's wage assignment statute requires that all assignments of wages be "revocable at any time." *See* Ind. Code § 22-2-6-2. The assignment of wages for union dues, however, is an area that has long been regulated by federal law. *See* 29 U.S.C. § 186(c)(4) (allowing written assignment of union dues, so long as they are not irrevocable for more than a year or

beyond the termination date of the CBA). So regulated, in fact, that there is no room for regulation by the states, and laws like Indiana's wage assignment statute are preempted when it comes to dues checkoffs. *See Shen-Mar Food Prods., Inc.*, 221 N.L.R.B. 1329, 1330 (1976) ("[M]atters concerning dues-checkoff authorization and labor agreements implementing such authorizations are exclusively within the domain of Federal law[.]"); *Int'l Bhd. of Oper. Potters v. Tell City Chair Co.*, 295 F. Supp. 961, 965 (S.D. Ind. 1968) ("Congressional regulation of the area of check-offs is sufficiently pervasive and encompassing to pre-empt" Indiana's wage assignment statute.); *SeaPAK v. Indus., Tech. & Prof. Empls.*, 300 F. Supp. 1197, 1200 (S.D. Ga. 1969) ("The area of checkoff of union dues has been federally occupied to such an extent . . . that no room remains for state regulation in the same field."), *aff'd* 423 F.2d 1229 (5th Cir. 1970), *aff'd* 400 U.S. 985 (1971). As a result, Indiana's wage-assignment statute does not govern dues checkoff authorizations like Shephard's, and the arbitrator's award did not require the company to violate the Indiana statute.

The arbitrator's award also did not require General Cable to violate Indiana's right-to-work law. That statute prohibits employees in Indiana from being required to join a union or "pay dues, fees, assessments, or other charges of any kind or amount to a labor organization . . . *as a condition of employment or continuation of employment*." (Ind. Code § 22-6-6-8 (emphasis added).) While it would prevent General Cable and the Teamsters from requiring employees to pay union dues or fees in order to work at the Marion plant, it does not prohibit employees from entering a standalone agreement to

8

pay union dues and fees. And that's the key—Shephard was not required to pay union dues in order to get or keep his job at General Cable; he was required to pay them because he voluntarily signed a dues checkoff assigning a portion of his wages. (*See* DE 20-1 at 76; *see also id.* at 52 (requiring the company to deduct and remit to the union dues and fees only from those "associates who sign authorization cards").) The dues checkoff Shephard signed did not violate Indiana's right-to-work statute.

But even if the Indiana right-to-work statute could be read to prohibit a dues checkoff like the one at issue here—and that's a real stretch—it would be preempted by federal labor law for the same reasons that Indiana's wage assignment law is preempted: federal law has left no room for state regulation in this arena. *See Shen-Mar Food Prods., Inc.,* 221 N.L.R.B. at 1330, *Int'l Bhd. of Oper. Potters*, 295 F. Supp. at 965; *SeaPAK,* 300 F. Supp. at 1200. General Cable cites *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014), to show that Indiana's right-to-work statute is *not* preempted, but the *Sweeney* decision considered preemption related to union security clauses, not dues checkoff authorizations. (DE 20-5 at 19; *see also Sweeney*, 767 F.3d at 659–60 ("[W]e read Section 14(b) as protecting states' authority to enact laws prohibiting union-security arrangements that are permissible under Section 8(a)(3) and other provisions of the NLRA.") (internal quotation marks, citations, and brackets omitted).) The case mentions prohibited dues and fees, but those are amounts that employees would be required to pay in order to work, not amounts that employees separately agree to pay (and could have refused to pay without losing their jobs). (*Id.*) *Sweeney* simply did not consider

9

whether Indiana's right-to-work statute is preempted in the realm of dues checkoff authorization.

In summary, Indiana state law does not govern the legality of the dues checkoff authorization Shephard signed, and the arbitrator did not exceed his authority by requiring the company to comply with federal labor law.

## Conclusion

For all of these reasons, the arbitrator did not exceed the authority the parties gave him or dispense "his own brand of industrial justice" in ruling that General Cable violated the CBA. Instead, he drew his opinion from the essence of the CBA and decided the dispute consistently with federal law. Accordingly, General Cable's Motion for Summary Judgment (DE 24) is **DENIED**, and the Teamsters' Motion for Summary Judgment (DE 26) is **GRANTED**. The arbitrator's award (DE 20-5) is hereby **CONFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of the Teamsters and to treat this cause as terminated.

**SO ORDERED.**

ENTERED: June 17, 2016.

s/ Philip P. Simon
CHIEF JUDGE
UNITED STATES DISTRICT COURT